FREDERICK F. SINGER, Individually and as Guardian ad Litem of MICHAEL SINGER, an Infant, Appellant, *v.* ALAN WALKER, Doing Business as WALKER's MINERALS, Defendant, and ESTWING MANUFACTURING CO., INC., Also Known as ESTWING MANUFACTURING COMPANY, Respondent.

First Department, May 26, 1964.

*Harry L. Koenig* of counsel for appellants.

*Abraham Burstein* of counsel (*Nathan E. Zelby* with him on the brief; *Zelby & Burstein*, attorneys), for respondent.

BREITEL, J. The issue in this personal injury action is whether the courts of this State may exercise personal jurisdiction over defendant foreign corporation under 302 Civil Practice Law and Rules and subject to the applicable constitutional limitations. Special Term held there was no such jurisdiction and plaintiffs appeal.

At Special Term, it was held that, because defendant corporation was not doing business in this State and the cause of action did not arise from any tortious act or from transaction of business in this State by defendant, the new statute (302) did not confer jurisdiction. While it is true that defendant does not do business in the State, and this has been judicially determined in a prior action brought by plaintiffs, the new statute authorizes jurisdiction over a nondomiciliary where a cause of action against him arises from the commission of a tortious act within the State. Because, under the complaint, defendant was responsible for a continuous tortious act, namely, the circulation in New York of a defective hammer, always bearing its mislabeling, a tortious act occurred in this State from which the cause of action arose; for the hammer would not have been acquired in New York except for the undisclosed defect and the mislabeling, and the occurrence of the harm in Connecticut was incidental for jurisdictional purposes. Notably, the statute is not defined in terms of requiring that the cause of action arise in the State, but only that it arise from the commission of a tortious act in the State. This is within constitutional limits,

and, therefore, there is personal jurisdiction over defendant, and the order setting aside service of the summons and complaint should be reversed and defendant's motion denied.

The complaint contains two causes of action, one in breach of warranty and the other in negligence. It alleges that a geologist's hammer, marked as unbreakable, broke while being wielded in rock-breaking by infant plaintiff, then 10 years old, resulting eventually in the loss of his eye. The hammer had been manufactured in Illinois by defendant corporation, and shipped, f. o. b. Rockford, Illinois, to a New York dealer. He had purchased it by a direct mail order, using a catalogue which had been mailed to him by defendant. The boy's aunt purchased the hammer from the New York dealer in February, 1960 and presented it to the boy. Plaintiffs, father and son, are residents of New York, but in April, 1960 they were in Connecticut on a field trip when the hammer broke and the son's injury sustained. The complaint also alleges that the hammer, if defective, had dangerous propensities and was an imminently as well as an inherently dangerous instrument.

Plaintiffs brought a prior action, but the service of process was set aside twice: first, on the ground that the service was not made on a proper person, and second, on the ground that defendant was not doing business in the State. The determinations were made under the old statute and before the jurisdiction over nondomiciliaries was enlarged by 302. Insofar as it was determined, however, that defendant did not do business within the State under the more traditional rules of jurisdiction to which 301 Civil Practice Law and Rules makes reference, it is *res judicata,* and plaintiffs may no longer rely on that basis for attempting service of process. (Restatement, Judgments, § 49 incl. Comment *b.*) The traditional rules, of course, are to be distinguished from the expanded jurisdiction now provided under 302 Civil Practice Law and Rules, including the transacting of any business and the committing of any tortious act within the State. To the extent that the Statute of Limitations is not a bar because of infancy, a new action may be pursued under the procedural remedy provided by 302 (CPLR 10003; *Muraco* v. *Ferentino,* 42 Misc 2d 104, 105–106; 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.04).

The new statute, effective September 1, 1963, provides in relevant part:

" § 302. Personal jurisdiction by acts of non-domiciliaries.

" (a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary, or his

executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:

" 1. transacts any business within the state; or

" 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

" 3. owns, uses or possesses any real property situated within the state."

The tort cause of action arose in Connecticut, under traditional analysis; but as already stated the statute is not cast in terms of where the cause of action arose. The modern trend is to reject the old cause of action test, both as a matter of fairness and because of the definitional problems which follow in the wake of that test (cf. Uniform Interstate and International Procedure Act, § 1.03 incl. Comr.'s Notes, 9B Uniform Laws Ann. 1963 Supp., pp. 75–78). It suffices that a tortious act is committed within this State, albeit the harm, and, therefore, the cause of action, arose in Connecticut.[1]

A breach of warranty resulting in harm is now characterized as also a tortious wrong (*Goldberg* v. *Kollsman Instrument Corp.*, 12 N Y 2d 432, 436; *Randy Knitwear* v. *American Cyanamid Co.*, 11 N Y 2d 5, 10–11; Prosser, Torts [2d ed.], pp. 493–496). Hence, both causes of action are in tort. That a tortious act was committed by defendant corporation in New York would appear from the physical delivery and circulation in the New York market of the defective hammer, a particularly dangerous instrument because of its function and the false labeling which it bore with respect to its unbreakability (Restatement, Torts 2d [Tent. Draft No. 10, April 20, 1964], § 402A[2]). The fact that

---

1. The Advisory Committee on Practice and Procedure stated the CPLR section "is designed to take advantage of the constitutional power of the state of New York to subject non-residents to personal jurisdiction when they commit acts within the state" (Second Preliminary Report of Advisory Comm. on Practice and Procedure [1958 Report, Temporary Commission on Courts], N. Y. Legis. Doc., 1958, No. 13, p. 39).

2. "§ 402A. *Special Liability of Seller of Product to User or Consumer.*

" (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property, is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

" (a) The seller is engaged in the business of selling such a product, and

" (b) It is expected to reach the user or consumer in the condition in which it is sold.

the hammer was shipped by the seller, f. o. b. Rockford, Illinois, is significant in sales law for determining the risk of loss in transit and the like. Nonetheless, it is still the seller, defendant corporation, which sent the mislabeled defective hammer into the New York market knowing that it would be circulated there for sale.

To be sure, cases analyzing in traditional fashion the tortious act as compared with the complete tort hold generally that the duty of proper manufacture was breached in the manufacture or production of a defective product and, therefore, occurs only at the place of manufacture (see, e.g., *Trippe Mfg. Co.* v. *Spencer Gifts,* 270 F. 2d 821, 823 [C. A. 7th]; *Putnam* v. *Triangle Pub.,* 245 N. C. 432; *Insull* v. *New York World-Tel. Corp.,* 172 F. Supp. 615, 631 [E. D. Ill.], affd. 273 F. 2d 166 [C. A. 7th], cert. den. 362 U. S. 942; 2 Frumer and Friedman, Products Liability, § 45.02 and cases cited; cf. *Atkins* v. *Jones & Laughlin Steel Corp.,* 258 Minn. 571; see, also, Uniform Interstate and International Procedure Act, § 1.03 incl. Comr.'s Notes, 9B Uniform Laws Ann. 1963 Supp., pp. 75–78, *supra*). (The analysis is then carried further to allow of jurisdiction in personam where the harm occurred, because the cause of action arose there, even if not at the place of manufacture or production.) But there are some breaches of duty which create a continuing condition of hazard to users, very much like an enjoinable nuisance which may ground a cause of action short of the harm having yet occurred (66 C. J. S., Nuisances, § 110; Anno. Injunction — Threatened Nuisance, 26 A. L. R. 937; 55 A. L. R. 880). In the case of an instrument defective in construction or dangerous because mislabeled the hazard persists wherever and so long as the product circulates. To be sure, if there had not been any contact with the user in a place where the product has circulated (in this case, New York) but only in the place where the harm occurred (in this case, Connecticut), it could not be said that the cause of action arising from the harm had any practical relation to the events in the place where the product had merely circulated (New York). Hence, in that instance, it could not be said that the cause of action

---

" (2) The rule stated in subsection (1) applies although

" (a) The seller has exercised all possible care in the preparation and sale of his product, and

" (b) The user or consumer has not bought the product from or entered into any contractual relation with the seller."

(See, also, the reporter's notes, including his classification, under the cases, of dangerous products.)

arose from any act in the place of circulation (New York). That, however, is not this case.

In this case the acquisition by the infant plaintiff of the defective hammer occurred in New York and occurred in New York only because the defendant was responsible for the circulation in New York of the defective hammer which, being mislabeled, increased the hazard. It is alleged that there was reliance by the aunt and plaintiffs on the representations. The fact that the infant plaintiff obtained possession of the hammer in New York is an essential nexus to sustain jurisdiction. By the same token, the place or places to which the infant plaintiff took the hammer in his use of it is of less relevance. Thus, it happened that it was in Connecticut that the defective hammer broke under the strain to which it was subjected and caused the harm. It could just as well have been in New York or in any other place that this would have happened.

On this view, the tortious act, namely, the circulation in New York of the dangerous instrument mislabeled, was proximately connected with the acquisition and continued possession by the infant plaintiff and his resulting injury. This should suffice, therefore, to satisfy the requirements of 302 (subd. [a], par. 2) and also to satisfy the constitutional limitations which require some contacts within the State in which the action is brought in order to sustain personal jurisdiction.

Until recently, products liability cases had been restrictively affected by the "doing business" or "presence" doctrine of jurisdiction in the selection of forums in which the foreign manufacturers might be sued. Under the impact of the newer jurisdiction-expanding cases in the Supreme Court, the restrictions have been substantially removed (*International Shoe Co.* v. *Washington,* 326 U. S. 310; *McGee* v. *International Life Ins. Co.,* 355 U. S. 220; 2 Frumer and Friedman, Products Liability, § 45.01).

It has been recognized that, assuming some causal nexus, jurisdiction, as distinguished from the application of the appropriate law, may rest upon events (contacts) in between the manufacture of a harmful product and the occasion of harm. Whatever other reasons exist for the rarity of cases involving this intermediate situation, a principal cause would be that there was no opportunity to entertain such cases so long as the old "doing business" or "presence" doctrine prevailed. (For a subtle and considered discussion of the problem see Ehrenzweig, Conflict of Laws, 114–118, 587–592.) Restatement, Conflicts 2d, in stating the rules to cover the enlarged judicial jurisdiction over nondomiciliaries says of a foreign corporation in part:

"A state has judicial jurisdiction over a foreign corporation as to causes of action arising out of (1) an act done, or caused to be done, by the corporation in the state or resulting in consequences there." (Tent. Draft No. 3 [1956], § 91a; cf. *id.* § 84 incl. Comments.) While the Restatement does not go as far in its Comments as does Ehrenzweig in his analysis, its language, it would seem, is sufficiently broad to embrace the same concepts.

A recent and influential case, albeit distinguishable, in the field of jurisdiction is *Erlanger Mills* v. *Cohoes Fibre Mills* (239 F. 2d 502 [C. A. 4th, 1956]). There the court struck down as unconstitutional the application of a very broad North Carolina jurisdiction statute.[3] Plaintiff sued in Federal court in North Carolina against a New York corporation for the sale to it of inferior goods. The order for the goods had been placed in New York by plaintiff and accepted in New York, and the goods were then shipped f. o. b. New York. That case, of course, did not involve the present situation. In this case the goods were ordered from New York by a New York dealer from defendant's catalogue which had been sent into New York by defendant, and the goods were then shipped into New York. Moreover, unlike the *Erlanger* case, defendant corporation, although short of being present in the jurisdictional sense, does a great deal of business directly in the New York area, sending its salesmen and its catalogues into the city. In the *Erlanger* case it was a first transaction for the defendant with the North Carolina firm, and all arrangements for the purchase had been made in New York by plaintiff. Withal, the *Erlanger* decision has not been without its adverse critics (see 1 Weinstein-Korn-Miller, *op. cit. supra,* par. 302.03, pp. 3–33 to 3–34). But there is a further distinction to be made between the *Erlanger* case and this one. The *Erlanger* case involved but an ordinary breach of warranty in contract resulting in a claim of lesser value. This case is in tort and involves an instrument dangerous

---

3. The pertinent part of the statute reads:

"*Jurisdiction over foreign corporations not transacting business in this State* — (a) Every foreign corporation shall be subject to suit in this State, by a resident of this State or by a person having a usual place of business in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: * * *

"(3) Out of the production, manufacture, or distribution of goods by such corporation with the reasonable expectation that those goods are to be used or consumed in this State and are so used and consumed, regardless of how or where the goods were produced, manufactured, marketed, or sold or whether or not through the medium of independent contractors or dealers." (N. C. Gen. Stat., § 55–38.1.)

to human beings if defective. (Restatement, Conflicts 2d [Tent. Draft No. 3, 1956], § 84, *Comment c.*)

Supportive of the analysis here, and in its facts going well beyond the necessities of this case, is *Gray* v. *American Radiator & Std. Sanitary Corp.* (22 Ill. 2d 432). That case involved a statute very similar to 302. Under it the court sustained jurisdiction over a defendant manufacturer located in Ohio which had sold its product to a manufacturer in Pennsylvania, who assembled it into a water heater. The heater was sold in Illinois and exploded there injuring plaintiff Gray. The case, of course, presents difficult problems since the manufacturer's contact with the State of Illinois was slender, indeed, it having done little in Illinois except to be responsible for its defective part having been incorporated into an assembly which, in turn, was sent and delivered into Illinois by another. (For an analysis of the *Gray* case, see 1 Weinstein-Korn-Miller, *op. cit. supra*, par. 302.10.)

It would seem, therefore, that the New York statute comes well within the constitutional limitations. It is not necessary to determine in this case whether the New York statute exhausts the possibilities within the constitutional limitations. Of paramount importance, no doubt, is the fact that an instrument dangerous to human life and health, if defective, is involved. Due process considerations would undoubtedly be more restrictive if there were involved simply a dispute of commercial dimensions between parties to a commercial contract. Where one introduces into a State a dangerous instrument the expectation of responsibility should be greater. Of little consequence except, perhaps, for purposes of determining the applicable conflict of law rules, is the fact that a cause of action in the traditional sense arose in Connecticut. Whatever it was that defendant corporation did, it did not only in the State of Connecticut, but it did the same in the State of New York. Once it is found that a tortious act occurred in this State it is only reasonable that the actor should be responsible in New York to its residents with respect to any cause of action arising from such activity.

Accordingly, the order granting defendant corporation's motion to set aside the service of the summons and complaint should be reversed on the law, without costs to plaintiffs-appellants.

Botein, P. J., Valente, Eager and Witmer, JJ., concur.

Order, entered on November 21, 1963, unanimously reversed, on the law, without costs, and the motion to vacate service of the summons and complaint denied.