413 P.2d 732

Vivian PHILLIPS, Appellant,

v.

ANCHOR HOCKING GLASS CORPORA-TION, an Ohio corporation, Appellee.

No. 7839 PR.

Supreme Court of Arizona.

En Banc.

April 28, 1966.

McKesson, Renaud & Cook, A. S. Johnston, III, and Sidney S. Pearce, Jr., Phoenix, for appellant.

Shimmel, Hill, Kleindienst & Bishop and Richard A. Black, Phoenix, for appellee.

BERNSTEIN, Vice Chief Justice.

Pursuant to 17 A.R.S. Rule 47(b), Rules of the Supreme Court and A.R.S. § 12–

120.24, we granted a petition to review the decision of the Court of Appeals reported in 2 Ariz.App. 267, 407 P.2d 948. The Court of Appeals, Division I, affirmed the judgment of the Maricopa County Superior Court which dismissed the complaint of the appellant, hereinafter called plaintiff, upon the motion of the appellee, hereinafter called defendant.

The plaintiff's complaint, filed December 13, 1961, alleges that plaintiff is a resident of Arizona and defendant is an Ohio corporation doing business in Ohio where it manufactures baking dishes. Plaintiff purchased a baking dish and when she used it on February 14, 1960 at her home in Phoenix she claimed "that said dish did then and there break apart in Plaintiff's left hand and the broken edge of said dish did slice, slash and cut the fingers of the Plaintiff's left hand." Plaintiff has failed to allege in the complaint that she purchased the baking dish in Arizona or that the defendant was doing business in Arizona at the time of the purchase, the time of the injury or when the complaint was filed. Service of summons was made upon the defendant by registered mail pursuant to Rule 4(e) (2) (a), Rules of Civil Procedure, 16 A.R.S.

On June 8, 1962, the defendant entered an appearance by filing a motion to dismiss under Rule 12(b) for lack of jurisdiction. An affidavit of defense counsel attached to the motion to dismiss alleged that the defendant had no agent in Arizona nor any property of any nature and manufactured all of its products outside the state. On August 29, 1962 plaintiff's counsel submitted a counter-affidavit stating:

"* * * that he has personally made investigations in the City of Phoenix, Maricopa County, State of Arizona relative to the glassware products bearing the name of Anchor Hocking Glass Corporation as the manufacturer of said items of glassware; that he has found an extremely large number of said items of Anchor Hocking glassware offered for sale in the City of Phoenix, State of Arizona; that upon information and belief and your affiant does verily believe, the defendant Anchor Hocking Glass Corporation is one of the largest manufacturers and producers of glasswares and that said glassware is available for sale in all of the States of the Union, including the State of Arizona."

The affidavit does not state when the investigation was conducted or whether defendant directly shipped its glassware into the state. Therefore, we have a situation where the defendant's only contract with our state up to and including the time of plaintiff's injury is the presence of a single allegedly defective product which it manufactured and which we assume was sold to plaintiff outside the state. After the injury, defendant's only contact was the presence of its products for sale in the state.

The question presented is whether these facts will allow our trial court to exercise in personam jurisdiction over the defendant. Rule 4(e) (2) allows Arizona courts to acquire personal jurisdiction over a nonresident defendant who "has caused an event to occur in this state out of which the claim which is the subject of the complaint arose." The constitutionality of the rule has been upheld in Heat Pump Equipment Co. v. Glen Alden Corp., 93 Ariz. 361, 380 P.2d 1016. The choice of the general language quoted above is intended to give Arizona residents the maximum privileges permitted by the Constitution of the United States. State Bar Committee Note following Rule 4(e) (1). Hence, we must discover the limits of personal jurisdiction constitutionally allowed, then decide whether the case before us falls within those limits.

The United States Supreme Court has established the principle that a state court may acquire personal jurisdiction over a nonresident defendant if he has "minimum contacts" with the state so that maintenance of the suit will not offend "traditional notions of fair play and substantial justice". International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. In McGee the court approved Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193 where it was held that a single tortious act committed by a defendant intentionally in the forum satisfied the "minimum contacts" test. See also Porter, Citations and Appearances—Jurisdiction of Foreign Corporations—Single Tortious Act, 36 Tul.L.R. 336. Furthermore, in Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 the court said personal jurisdiction may be exercised over a nonresident defendant if he has substantial contacts with the forum though the plaintiff's cause of action does not arise out of those contacts. In Perkins the defendant's contacts with the forum existed at the time the cause of action arose. In the case before us, it can be argued on the theory of the Gray case discussed below that the defendant committed a tortious act within this state and is subject to personal jurisdiction as in the Smyth case. Alternatively, it seems fair on the authority of the Perkins case to exercise jurisdiction over the defendant because he now has substantial contacts with Arizona though there may not have been when the cause of action arose. We must, however, discuss recent development of the law of in personam jurisdiction.

The traditional notions of fair play and substantial justice which must be satisfied before a nonresident defendant is amenable to jurisdiction have not and perhaps cannot be clearly defined. One approach has been to collect cases where the fairness test

was satisfied. Professor Scott, in compiling United States decisions, said:

"The Supreme Court, however, has held that a state may exercise jurisdiction through its courts over a foreign corporation doing business within the state, even though the cause of action arose elsewhere; over an individual doing business within the state, at least as to causes of action arising out of business done in the state; over a corporation or individual doing acts within the state, such as operating an automobile or committing a tort; over a corporation or individual making contracts within the state or otherwise closely connected with the state." Scott, Hanson v. Denckla, 72 Harv.L.R. 695, 702.

Moore's Federal Practice has summarized the Supreme Court decisions as follows:

"If there are substantial contacts with the state, for example a substantial and continuing business, and if the cause of action arises [out] of the business done in the state, jurisdiction will be sustained. If there are substantial contacts with the state, but the cause of action does not arise out of these contacts, jurisdiction may be sustained. If there is a minimum of contacts, and the cause of action arises out of the contacts, it will normally be fair and reasonable to sustain jurisdiction." 2 Moore's Federal Practice, § 4.25(5), p. 1173.

The important trend in our notions of fairness has been a shift from emphasizing what is fair to the defendant to a consideration of what is fair to both parties. It has been said that fair play and substantial justice are satisfied if (1) the cause of action involves local contacts which make it reasonably desirable from plaintiff's point of view that the case be tried at the selected forum, (2) the defendant has sufficient causal responsibility for the presence of the local contacts in the forum state to permit us to conclude that he has by his own volition subjected himself to answering for them there, and (3) relevant public interests are served, or not disserved, by allowing the cause to be determined at that forum. Leflar, The Converging Limits of State Jurisdictional Powers, 9 Journal of Public Law 282.

It has been held that fair play includes a consideration of the quality, nature and extent of defendant's activity in the forum state, relative convenience of the parties in relation to the place of trial, the benefits and protections of the laws of the forum state afforded the parties, and the basic equities existing between the parties. Tyee Const. Co. v. Dulien Steel Products, Inc., 62 Wash.2d 106, 381 P.2d 245.

From International Shoe until immediately prior to Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 the Supreme Court evolved a doctrine of non-interference with the exercise of jurisdiction over

nonresidents by state courts. The "fairness" test calls for an independent determination by the court upon the merits of each case. Kurland, The Supreme Court, The Due Process Clause and the In Personam Jurisdiction of State Courts, 25 Univ. of Chi.L.R. 569.

It has been nearly a decade since the United States Supreme Court handed down Hanson v. Denckla, supra. That case was an unusual situation in which the court achieved substantial justice, but it is of questionable value as a precedent regarding the problem of personal jurisdiction over nonresident defendants. In that opinion, the majority reaffirmed the McGee principle ·that a defendant renders himself amenable to jurisdiction by committing a single act within the forum state. The majority went on to say:

"* * * it is essential in each case that there be some act by which the defendant *purposefully* avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." 357 U.S. at 253, 78 S.Ct. at 1240 (*Emphasis* added)

The statement has caused state courts some concern which is discussed below. We do not think the quoted language can be construed literally. *To do so is to revitalize* the "implied consent" theory emasculated by the International Shoe case and to reverse the trend expanding state jurisdiction over nonresidents which trend was recognized in the Hanson decision. To make the requirement of purposeful activity within the state a necessary prerequisite to personal jurisdiction in all cases undermines the notion that the facts of each case must be examined to decide whether it is fair to exercise jurisdiction over the defendant. Furthermore, it is apparent that all personal jurisdiction questions cannot be determined by asking whether the defendant purposefully conducted activities within the forum state to obtain the benefits and protections of its laws. Tortious and negligent acts are obvious examples in which it is unrealistic to say that the actors first considered the laws of the state in which such acts were committed. A rule limiting jurisdiction to defendants who "purposefully" conduct activities within the state cannot properly be applied in product liability cases in view of the fortuitous route by which products enter any particular state. *Cummins, In Personam Jurisdiction Over Nonresident Manufacturers in Product Liability Actions,* 63 Mich.L.R. 1028.

A fair reading of the Hanson decision leads us to the conclusion that the Supreme Court is concerned about our federalism. State boundaries may be as easily erased by the enhancement of state power as by the expansion of national authority. Kurland, supra; Sobeloff, Jurisdiction of State Courts over Non-Residents in Our Federal System, 43 Cornell L.Q. 196; Stimson, Omnibus Statutes Designed to Secure Jurisdic-

tino Over Out-of-State Defendants, 48 A. B.A.J. 725. But the Hanson case does not affect the test of personal jurisdiction over nonresident defendants established in International Shoe. We are still required to determine whether it is fair to exercise jurisdiction over the defendant.

The next question is how far the states have extended jurisdiction over nonresident defendants in product liability cases. Many decisions were compiled by Professor Cleary in The Length of The Long Arm, 9 Journal of Public Law 293 where he first notes that distinctions in principle no longer exist between individuals and corporations for purposes of jurisdiction. He then concludes state courts hold that the commission of a tort within the territory of the forum, or sustaining injury within the territory of the forum from a tort committed elsewhere is a sufficient contact upon which to base jurisdiction over the defendant as regards that tort. See also Developments in the Law—State-Court Jurisdiction, 73 Harv.L.R. 909. Professor Cleary includes product liability cases in the tort category. Note, The Effect of Statutes of Limitations on Implied Warranty Actions, 5 Washburn L.J. 62; Rapson, Products Liability Under Parallel Doctrines: Contracts Between The Uniform Commercial Code and Strict Liability in Tort, 19 Rutgers L.R. 692.

In the most recent product liability cases state courts have held it is fair to exercise personal jurisdiction over a nonresident de-fendant though his only contact with the forum was that the defective product caused the plaintiff's injury there. But the courts have been concerned about the language in Hanson quoted above and have felt constrained to require that the presence of the defendant's product in the jurisdiction must have been a foreseeable event. Apparently, foreseeability is supposed to satisfy the "purposeful activity" language of Hanson. Thode, In Personam Jurisdiction; Article 2031 B, the Texas "Long Arm" Jurisdiction Statute; and the Appearance to Challenge Jurisdiction in Texas and Elsewhere, 42 Tex.L.R. 279.

In Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 the defendant challenging jurisdiction had manufactured a safety valve which it sold outside the jurisdiction to a radiator manufacturer. The radiator was in the state when it exploded injuring the plaintiff. The statute provided for jurisdiction over a nonresident defendant who committed a tortious act within the state. The court, analogizing to traditional conflict-of-law principles, reasoned that a tortious act is not committed until the injury occurs. Since the injury occurred in the state, the statute was satisfied and the defendant was subject to jurisdiction over his person. The court held that a single tortious act within the forum meets the "minimum contacts" requirement of International Shoe and satisfied traditional notions of fair play. The

court next raised the issue of foreseeability in somewhat ambiguous terms. It first stated that the record failed to disclose whether the defendant did any business in the forum. Then the court said "it is a reasonable inference that (defendant's) commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State" and that the safety valves were "presumably sold in contemplation of use here". 176 N.E.2d at 766. The court said that, "[a]s a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products." 176 N.E.2d at 766. Finally, the court said "defendant does not claim that the present use of its product in the forum is an isolated instance." 176 N.E.2d at 766. Essentially, the court held that a nonresident defendant is amenable to personal jurisdiction where his defective product causes injury within the forum though he did not intentionally put his product there unless he, the defendant, proves that the presence of his product in the forum was an unforeseeable event.

In Ehlers v. United States Heating & Cooling Mfg. Corp., 267 Minn. 56, 124 N.W. 2d 824 the court exercised jurisdiction though the defendant's only contact with the forum was the plaintiff's property damage caused by the defendant's defective product. The statute provided that a corporation shall be deemed to be doing business for the purposes of personal jurisdiction if it committed a tort in whole or in part in the state. The court said the product was manufactured for the general public and nationwide use and "apparently" arrived in the state through the regular course of commerce. The court then said "[w]hether a different result would follow in this case were the manufacturer to have established that the use of this product in (the forum) was not foreseeable need not and is not determined." 124 N.W.2d at 827. Again, as in the Gray case, the court suggested that a defendant is not subject to personal jurisdiction for selling a defective product outside the forum which causes injury within the forum if he can prove that the presence of his product within the forum was unforeseeable. To the same effect are Andersen v. National Presto Industries, Inc., (Iowa Sup.Ct.) 135 N.W.2d 639; Sheridan v. Cadet Chemical Corporation, 25 Conn.Sup. 17, 195 A.2d 766 and Roy v. North American Newspaper Alliance, Inc., 106 N.H. 92, 205 A.2d 844. See also Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., Wash., 403 P.2d 351, cert. denied, 1966, 382 U.S. 1025, 86 S.Ct. 644, 15 L.Ed.2d 539.

Vermont has left open both the question of whether foreseeability is a prerequisite to jurisdiction where only the injury occurs in the forum and the question of whether the defendant must disprove or the plain-

tiff prove foreseeability. O'Brien v. Comstock Foods, Inc., 123 Vt. 461, 194 A.2d 568. New York has construed its jurisdiction statute to require that the tortious act as well as the injury must occur in the forum, specifically rejecting the Gray rationale. Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S. 2d 8, 209 N.E.2d 68. Finally, we note that Mississippi has actually used the Hanson v. Denckla language and held that the defendant was not subject to personal jurisdiction because he did not "purposefully" do any act or consummate any transaction in the state. Breckenridge v. Time, Inc., (Miss. Sup.Ct.) 179 So.2d 781.

As stated above, we do not think the Hanson case altered the International Shoe principle permitting a state court to exercise personal jurisdiction over a nonresident defendant if he has a "minimum contact" with the forum which will satisfy our notions of fair play and substantial justice. We disagree with those states which have conceded significance to the "purposeful activity" language of Hanson by refusing jurisdiction in product liability cases over a defendant who could not foresee the presence of his product within the forum. Conceding significance to the "purposeful activity" language of Hanson may have been responsible for the tortious conduct statutes which have been difficult to apply in certain factual situations. Singer v. Walker, 21 A.D.2d 285, 250 N.Y.S.2d 216 affirmed Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra. Our statute avoids such semantic difficulties and the resulting emphasis on choice of law doctrine which was rejected in the Hanson decision as an inappropriate measure of jurisdiction over the person.

Nevertheless, we must decide whether our notions of fair play necessarily require proof of foreseeability in product liability cases though that requirement is not imposed upon us by the United States Supreme Court.

Upon reflection, we think it would be a rare situation where a manufacturer could not foresee the presence of his product anywhere within the continental United States. That possibility should motivate him to seek appropriate insurance. Ehrenzweig, Products Liability in the Conflict of Laws—Toward a Theory of Enterprise Liability Under "Foreseeable and Insurable Laws": II, 69 Yale L.J. 794; Morris, Enterprise Liability and the Actuarial Process—The Insignificance of Foresight, 70 Yale L.J. 554.

We do not think foreseeability itself is a necessary prerequisite to fairness. Cf. Note, Products Liability and the Choice of Law, 78 Harv.L.R. 1452. Ordinarily, a manufacturer is primarily interested in the consumption of his product, not where it is consumed. If his product is defective he may be held liable for the damage caused

thereby whether suit is brought in his state or plaintiff's state. The manufacturer should not necessarily be allowed to divorce himself from liability for a defective product solely because he cannot foresee where it will be consumed.

Of course, foreseeability and more importantly the facts underlying a determination of foreseeability are relevant. Such facts as the nature and volume of a manufacturer's business certainly bear upon whether it is fair to exercise jurisdiction over him. Moreover, the fairness of exercising jurisdiction may be affected because the defendant could not foresee that his product would come to rest in one of those jurisdictions imposing strict liability in product liability cases. Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099. Fairness, not foreseeability is the test of jurisdiction over a nonresident defendant. We cannot rule as a matter of law that unforeseeability equals unfairness. There may be cases where fairness will be served by exercising jurisdiction over a defendant though he could not foresee the presence of his product in the forum. We cannot speculate about such factual matters which should be resolved by a trial court in the first instance.

■ There are several factors which a trial court should consider in determining whether it is fair to exercise jurisdiction over a nonresident manufacturer whose product has injured a resident plaintiff in this state. First, the court should consider the nature and size of the manufacturer's business. As the probability of the product entering interstate commerce and the size or volume of the business increase, the fairness of making the manufacturer defend in the plaintiff's forum increases. Second, the court should consider the economic independence of the plaintiff. A poor man is likely to become a public ward if his injuries are uncompensated. Moreover, he may not be able to afford a trip to another jurisdiction to institute suit. In addition, he may feel unable to cope with the prospect of traveling to a strange state. The immobility of our lower economic class is well known. Third, the court should consider the nature of the cause of action including the applicable law and the practical matters of trial. As the number of local witnesses increases and their availability to travel decreases, it seems fairer to make the manufacturer defend in the plaintiff's forum. These factors discussed above are guidelines to assist the trial court. They are not exclusive and the court should consider all other matters it deems relevant.

Defendant argues that a broad interpretation of Rule 4(e) (2) would render "the effect of the Arizona Limitation of Actions statutes violative of the equal privileges and immunities provisions of the Constitution

of the United States." A.R.S. § 12–501 provides:

"12–501. Effect of absence from state

When a person against whom there is a cause of action is without the state at the time the cause of action accrues or at any time during which the action might have been maintained, such action may be brought against the person after his return to the state. The time of such person's absence shall not be counted or taken as a part of the time limited by the provisions of this chapter."

Defendant contends the statute of limitation would never run against a manufacturer who does not have an authorized agent in the state and has not committed an act, such as driving upon our highways, which would result in impliedly appointing an agent. Defendant claims "At any time until the claimant's death, the manufacturer could be called upon to defend plaintiff's action by the plaintiff simply electing to send a registered letter to the defendant in Ohio. The absurdity and unfairness of this situation is apparent."

■■ Defendant's argument is without merit. For a foreign corporation to be "without the state" or "absent" within the meaning of a statute providing for the tolling of limitations during the absence of the defendant, it must be out of the state in the sense that it could not be served with process. Dedmon v. Falls Products, Incorporated (5th Cir.), 299 F.2d 173; Young v. Hicks (8th Cir.), 250 F.2d 80; Steiner v. 20th Century-Fox Film Corporation (9th Cir.), 232 F.2d 190. Since we have held that defendant can be properly served, the statute of limitations is not tolled.

■ Since this is a case of first impression, and to determine whether the exercise of jurisdiction by the trial court will not offend traditional notions of fair play and substantial justice, we think justice will be best served by allowing the parties the opportunity of presenting any additional evidence relevant to the issue of fairness.

The opinion of the Court of Appeals is vacated. The case is reversed and remanded to the trial court for proceedings consistent with this opinion.

STRUCKMEYER, C. J., and UDALL, LOCKWOOD and McFARLAND, JJ., concur.