RITA ROCHE, EXECUTRIX OF THE ESTATE OF JOSEPH J. ROCHE, DECEASED, PLAINTIFF-APPELLANT, v. FLORAL RENTAL CORP., A CORPORATION, U. S. W. MEAT PACKING CORP., A CORPORATION, VINCENT BURZO, INTERNATIONAL HARVESTER CO., A CORPORATION, AND GARTRELL MOTORS, INC., A CORPORATION, DEFENDANTS AND THIRD-PARTY PLAINTIFFS-APPELLANTS, v. U. S. REFRIGERATION CORP., A CORPORATION, THIRD-PARTY DEFENDANT, AND J. C. TRUCK EQUIPMENT, INC., A CORPORATION, THIRD PARTY DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 12, 1966—Decided June 29, 1967.

556

Before Judges GAULKIN, LEWIS and LABRECQUE.

*Mr. Arthur C. Gundersdorf* argued the cause for plaintiff-appellant (*Messrs. Nochimson, Irwin and Larsen,* attorneys).

*Mr. Joseph V. Cullum* argued the cause for third-party defendant-respondent, J. C. Truck Equipment, Inc. (*Mr. Leo Brauer,* attorney).

*Mr. Joseph Coult* argued the cause for defendants and third-party plaintiffs-appellants.

The opinion of the court was delivered by

GAULKIN, S. J. A. D. Plaintiff's decedent was killed when his car collided on the New Jersey end of the George Washington Bridge with a truck driven by defendant Burzo. The truck was leased by U. S. W. Meat Packing Corporation, Burzo's employer, from Floral Rental Corporation. Floral had purchased the vehicle, an International Harvester truck

with refrigerated body, from Gartrell Motors, Inc. Gartrell had purchased the truck chassis from International Harvester Co. and had hired J. C. Truck Equipment, Inc. (hereafter J. C.) to install thereon a refrigerator body supplied by defendant U. S. Refrigeration Corp.

By her amended complaint plaintiff sues all of the defendants above named. All of the corporate defendants are foreign corporations. Defendant J. C. was served by plaintiff and the third-party plaintiffs pursuant to *R. R.* 4:4–4(d). It moved to set aside the service for lack of *in personam* jurisdiction. The motion was granted, and plaintiff and defendants-third-party plaintiffs appeal.

The seventh count of plaintiff's amended complaint alleges:

"2. Some time prior to May 6, 1963 the defendants U. S. Refrigeration Corp., a corporation, and J. C. Truck Equipment, Inc., a corporation, undertook to and in fact did install a certain refrigerator body, together with a compressor and refrigeration drive shaft, on the said truck chassis, and thereafter and up to May 6, 1963, these defendants maintained and repaired the said refrigeration body compressor unit and the component parts thereof.

3. The defendants U. S. Refrigeration Corp. and J. C. Truck Equipment, Inc., their agents and servants were negligent and careless in the manner in which they installed, maintained and repaired said refrigeration body compressor unit and the component parts thereof, as a result of which the drive shaft of said refrigeration unit became loose and disconnected and one end fell to the pavement and was a proximate cause of the loss of control of the vehicle by the driver thereof, Vincent Burzo, as a result of which the said truck crossed over into the westbound lanes and collided with the motor vehicle being operated in a westerly direction by the said Joseph J. Roche."

The eighth count repeats the allegations of paragraph 2 of the seventh count and then says:

"2. The defendants U. S. Refrigeration Corp. and J. C. Truck Equipment, Inc., in installing, maintaining and repairing the said refrigeration body, compressor unit and the component parts thereof, expressly and impliedly warranted that the work performed by them would be merchantable and fit for the use intended when in fact it was not merchantable and fit for the use intended as a result of

which the drive shaft of the refrigeration unit became loose and disconnected and fell to the roadway, and was a proximate cause of the happening of the said accident."

The defendants-third party-plaintiffs-appellants make the same allegations against J. C.

J. C.'s only place of business is in Garden City, Long Island, New York. The depositions taken in support of the motion show that J. C. is not authorized to do business in New Jersey, has no office, salesmen or other representatives here, and has had no "contacts" with New Jersey other than those hereafter set forth.

J. C. is engaged in the sale and service of truck bodies and equipment, including van, dump and refrigerated bodies. It employs 32 persons and attaches about 1,000 bodies to chassis each year. It has been in business for a number of years.

It has had customers from states other than New York and some may have been from New Jersey, but all J. C.'s work is done in Garden City. The chassis in question was delivered by Gartrell to J. C. at Garden City, and the completed truck was returned to Gartrell in New York.

J. C. is familiar with I. C. C. requirements for truck equipment and complies with those requirements whenever necessary. It buys parts from New Jersey distributors, but generally these are ordered by telephone or mail and are delivered by the seller to Garden City. However, from time to time J. C. supplies parts or equipment to concerns in New Jersey who are in the same line of business as J. C., "as a courtesy," which courtesy is reciprocated as J. C.'s need arises. J. C. also is a distributor for a New Jersey manufacturer of bumper guards. However, there is no proof that any parts obtained in New Jersey were used in this truck.

Although J. C. does no advertising or soliciting in New Jersey, it issues leaflets or catalogues which are distributed at truck shows and elsewhere. There is no proof that any of these were distributed in New Jersey.

In *Roland v. Modell's Shoppers World of Bergen County, Inc.*, 92 *N. J. Super.* 1, 10 (*App. Div.* 1966), we held that

"there is little question" but that direct shipment of a product into New Jersey, where it causes injury, is sufficient to establish the minimum contact necessary to support jurisdiction over the foreign shipper. However, we pointed out that there is great dispute "about whether indirect introduction into a foreign state will suffice, even if foreseeable."

The proposed official draft of *Restatement, Conflict of Laws 2d*, § 37 (May 2, 1967), states:

"Causing Effects in State by Act Done Elsewhere.

A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to causes of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable."

In the discussion which follows this section it is said:

"There are three possible situations: (1) The act was done with the intention of causing effects in the state; (2) the act, although not done with the intention of causing effects in the state, could reasonably have been expected to do so; and (3) the act was not done with the intention of causing effects in the state and could not reasonably have been expected to do so."

The *Reporter's Note, at page* 202, cites the following cases as supporting jurisdiction in situation (2): *Deveny v. Rheem Manufacturing Co.*, 319 F. 2d 124 (2d Cir. 1963); *W. H. Elliott & Sons Co. v. Nuodex Products Co.*, 243 F. 2d 116 (1 Cir. 1957); *Etzler v. Dille & McGuire Mfg. Co.*, 249 F. Supp. 1 (W. D. Va. 1965); *Jackson v. National Linen Service Corporation*, 248 F. Supp. 962 (W. D. Va. 1965); *Nationwide Motorist Ass'n v. Nationwide Motorist Ass'n*, 244 F. Supp. 490 (W. D. Mich. 1965); *Stephenson v. Duriron Co.*, 401 P 2d 423 (Alaska Sup. Ct. 1965); *cert. den.* 382 U. S. 956, 86 S. Ct. 431, 15 L. Ed. 2d 360 (1965); *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill. 2d 432, 176 N. E. 2d 761 (Sup. Ct. 1961); *Anderson v. National Presto Industries, Inc.*, 135 N. W. 2d 639 (Iowa

*Sup. Ct.* 1965) ; *Ehlers v. U. S. Heating & Cooling Mfg. Corp.,* 267 *Minn.* 56, 124 *N. W.* 2d 824 (*Sup. Ct.* 1963) ; *Metal-Matic, Inc. v. Eighth Judicial District Court,* 415 *P.* 2d 617 (*Nev. Sup. Ct.* 1966). But see *Lee v. Regina Corporation,* 253 *F. Supp.* 825 (*D. Conn.* 1966) ; *Trinity Steel Co. v. Modern Gas Sales & Service Co.,* 392 *S. W.* 2d 861 (*Tex. Civ. App.* 1965) ; *O'Brien v. Comstock Foods, Inc.,* 123 *Vt.* 461, 194 *A.* 2d 568 (*Sup. Ct.* 1963).

The statutes of several states expressly provide for long-arm service in a type (2) situation. *Conn. Gen. Stat. Ann.* § 33–411 (c)(3) ; *Mont. Rules Civ. Proced., Rule* 4 (B)(1)(b) ; *N. C. Gen. Stat.* § 55–145(a)(3) ; *Wis. Stat. Ann.* § 262.05(4). The statutes of other states have been construed to so provide. Compare *Gray v. American Radiator & Standard Sanitary Corp., supra,* with *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 *N. Y.* 2d 443, 261 *N. Y. S.* 2d 8, 209 *N. E.* 2d 68 (*Ct. App.* 1965), *certiorari* denied *Estwing Mfg. Co. v. Singer,* 382 *U. S.* 905, 86 *S. Ct.* 241, 15 *L. Ed.* 2d 158 (1965). We have no such problem of statutory construction in New Jersey because our courts can exercise jurisdiction to the full extent of due process of law, *Roland v. Modell's Shoppers World, supra,* 92 *N. J. Super.,* at *p.* 7.

In *Feathers v. McLucas,* 41 *Misc.* 498, 245 *N. Y. S.* 2d 282 (*Sup. Ct.* 1963), reversed 21 *App. Div.* 2d 558, 251 *N. Y. S.* 2d 548 (*App. Div.* 1964), reversed *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra,* plaintiffs were injured as a result of an explosion on a public highway near their home in Berlin, N. Y., when a tractor-drawn steel tank, containing highly flammable liquified propane gas, exploded. The tank, which was en route from Pennsylvania to Vermont, had been manufactured by Darby Products of Steel Plate Corporation, a Kansas company, under contract with the Butler Manufacturing Co., a Missouri corporation, "presumably with knowledge that the latter would mount the tank on a wheelbase and then sell it to E. Brooke Matlack, a Pennsylvania corporation, which operated as a li-

censed interstate carrier in Pennsylvania and several other states, including New York. All three companies were named among the defendants sued, the complaint charging Darby with negligence and breach of warranty in the manufacture of the tank." (209 *N. E. 2d,* at *p.* 76)

Darby was served in Kansas pursuant to CPLR 302 and 313 and thereafter moved to dismiss the action for lack of jurisdiction *in personam.* The motion was granted by the Supreme Court, Special Term (1963) which held that the "tortious act" was committed in Kansas. The Appellate Division reversed, holding:

> "The record demonstrates that it [Darby] had knowledge that the instant tank was constructed for its ultimate consignee, a Pennsylvania domiciliary, and was intended for use in interstate commerce. In these times of modern transportation it is a fair inference that respondent, despite a lack of precise knowledge of the range and extent of defendant Matlack's activities, could be expected reasonably to foresee that its acts, if wrongful, might well have potential consequences in adjoining New York. The basic requirement of due process is thus achieved and personal jurisdiction over respondent has been acquired." (251 *N. Y. S. 2d,* at *p.* 551)

The Court of Appeals reversed, but did so due to the narrowness of CPLR 302, New York's long-arm statute. The court, therefore, did not pass on the constitutional question. Chief Judge Desmond found CPLR 302 an adequate basis for jurisdiction, and in voting to affirm the Appellate Division stated that the rationale of the Illinois court in interpreting its long-arm statute in the *Gray* case was

> "* * * entirely fair and reasonable, well suited to today's ways of doing business and surely not outside the constitutional permissions explained in *McGee v. International Life Ins. Co.* (355 *U. S.* 220, 78 *S. Ct.* 199, 2 *L. Ed. 2d* 223) and *Hanson v. Denckla* (357 *U. S.* 235, 78 *S. Ct.* 1228, 2 *L. Ed. 2d* 1283)." 209 *N. E. 2d,* at *p.* 84.

In *Phillips v. Anchor Hocking Glass Corporation,* 100 *Ariz.* 251, 413 *P. 2d* 732 (1966), the Supreme Court of Arizona went even beyond *Gray* and held:

"We do not think foreseeability itself is a necessary prerequisite to fairness. *Cf.* Note, Products Liability and the Choice of Law, 78 Harv. L. R. 1452. Ordinarily, a manufacturer is primarily interested in the consumption of his product, not where it is consumed. If his product is defective he may be held liable for the damage caused thereby whether suit is brought in his state or plaintiff's state. The manufacturer should not necessarily be allowed to divorce himself from liability for a defective product solely because he cannot foresee where it will be consumed.

Of course, foreseeability and more importantly the facts underlying a determination of foreseeability are relevant. Such facts as the nature and volume of a manufacturer's business certainly bear upon whether it is fair to exercise jurisdiction over him. * * *. Fairness, not foreseeability is the test of jurisdiction over a nonresident defendant. We cannot rule as a matter of law that unforeseeability equals unfairness. There may be cases where fairness will be served by exercising jurisdiction over a defendant though he could not foresee the presence of his product in the forum. * * *." (413 *P.* 2*d*, at *pp.* 737–738)

Among the "several factors" which the Arizona court said should be considered "in determining whether it is fair to exercise jurisdiction over a nonresident manufacturer whose product has injured a resident plaintiff" were "the nature and size of the manufacturer's business. As the probability of the product entering interstate commerce and the size or volume of the business increase, the fairness of making the manufacturer defend in the plaintiff's forum increases * * *." (413 *P.* 2*d*, at *p.* 738). Other factors included the "economic independence of the plaintiff," the applicable choice-of-law rule and the convenience of the forum, all of which favor the exercise of jurisdiction in the case at bar.

■■ We do not now say that every foreseeable indirect introduction of a product into New Jersey, causing injury here, gives our courts jurisdiction over the maker. What we do say is that, under the facts of this case, New Jersey has jurisdiction, and we reverse.

In *International Shoe Co. v. State of Washington,* 326 *U. S.* 310, 66 *S. Ct.* 154, 90 *L. Ed.* 95, 102 (1945), the court said:

"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the

territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fairplay and substantial justice'." (326 *U. S.*, at *p.* 316, 66 *S. Ct.*, at *p.* 158).

The development of long-arm law since *International Shoe* is too well known to require repetition. See *Roland, supra,* 95 *N. J. p.* 6. We are aware that later cases have warned that there are limits to the reach of the long arm. See *J. W. Sparks & Co. v. Gallos,* 47 *N. J.* 295, 301 (1966); *Hanson v. Denckla,* 357 *U. S.* 235, 78 *S. Ct.* 1228, 2 *L. Ed. 2d* 1283 (1958). However, we do not think that these cases have changed the standard laid down in the above quotation from *International Shoe. Phillips v. Anchor Hocking Glass Corporation, supra,* 413 *P. 2d,* at *pp.* 735–737. The question then is, did J. C. have such "minimum contacts" with New Jersey "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'"? We think it had such contacts.

Long distance truckers, traveling from New York to the west and south, almost inevitably must cross New Jersey, but even among owners whose businesses are confined to the metropolitan area, there must be many who make deliveries or pick-ups here. J. C. in installing bodies on chassis to meet I. C. C. requirements must have realized this. In short, although there is no direct proof thereof, we think it is an inescapable conclusion that a great many J. C. built trucks did enter New Jersey and that J. C. could not help but expect them to do so. *Cf. Feathers v. McLucas, supra.* We hold that here, where one of those trucks caused injury in New Jersey, allegedly because of J. C.'s faulty construction, the totality of the facts set forth above constituted the necessary minimum contacts to support the service in question.

But, argues J. C., no agent or employees of ours brought any of these trucks into New Jersey. However, in *Rowland, supra,* we held the defendants subject to *in personam* jurisdiction even though they sent their products to New Jersey

by mail or independent common carrier. Here the normal usage of the product almost inevitably would bring it into New Jersey. That is the deciding factor. It is therefore not necessary to speculate upon what our holding would be if J. C.'s plant were further away or in a different relative geographic location, or if J. C. completed fewer trucks.

The judgment is reversed.