604 P.2d 670

**Fred RHOADS and Mattie Rhoads, husband and wife, Plaintiffs/Appellants,**

v.

**HARVEY PUBLICATIONS, INC., Sad Sack, Inc., Alfred Harvey, Leon Harvey, Robert Harvey, Defendants/Appellees.**

No. 2 CA–CIV 3318.

Court of Appeals of Arizona, Division 2.

Oct. 29, 1979.

Rehearing Denied Dec. 3, 1979.

Review Denied Dec. 18, 1979.

Joseph A. Lovallo and Charles P. Stirton, Tucson, for plaintiffs-appellants.

Stuart Herzog, Tucson, for defendants-appellees.

## OPINION

HATHAWAY, Judge.

Appellants, plaintiffs below, appeal from a dismissal of their complaint pursuant to 16 A.R.S., Rules of Civil Procedure, Rule 12(b)2. We find that personal jurisdiction over the defendants is proper in Arizona and reverse.

Plaintiff Fred Rhoads (Rhoads), an Arizona resident since 1968, had been engaged by the defendants as a cartoonist for approximately 24 years prior to the incident which gave rise to this action.

During the period the plaintiffs resided in Arizona, the defendants would furnish Rhoads a work schedule by mail outlining the cartoons to be finished and mailed to New York each month. Payment checks would then be mailed to Rhoads and the checks presented for payment in Arizona. In addition to the mail correspondence, Rhoads and the defendants periodically would discuss drawing assignments in telephone conversations between Arizona and New York.

This action arose when defendants, maintaining that Rhoads had always been a free lance artist, no longer ordered any cartoon work from him. Rhoads, claiming he had been led to believe he was an employee, brought an action for fraud. The defendants filed a pre-answer Rule 12(b)2 motion claiming lack of personal jurisdiction in Ari-

zona. The trial court granted the motion and this appeal followed.

Pursuant to 16 A.R.S., Rules of Civil Procedure, Rule 4(e)(2), the defendants were served by a person authorized to serve process under the laws of New York.

The U. S. Constitution limits a state's ability to achieve personal service outside its borders by means of "long-arm" statute or rule of the court. The fourteenth amendment due process clause requires that a defendant have "minimum contacts" with the forum so that requiring him to defend the action will not violate "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

Arizona has adopted the "minimum contacts" test of *International Shoe* and *McGee* in *Phillips v. Anchor Hocking Glass Corp.*, 100 Ariz. 251, 413 P.2d 732 (1966). In addition, in *Phillips*, the Arizona Supreme Court held that the Arizona "long-arm" rule was "intended to give Arizona residents the maximum privileges permitted by the Constitution of the United States." 100 Ariz. at 254, 413 P.2d at 733.

The issue of personal jurisdiction requires a two-part analysis: (1) Has the defendant done business or caused an event to occur in Arizona out of which the claim which is the subject of the complaint arose? and (2) Is the exercise of personal jurisdiction over the defendant consistent with the requirements of the due process clause of the fourteenth amendment? *Maloof v. Roper Sales, Inc.*, 113 Ariz. 485, 557 P.2d 522 (1976); 16 A.R.S., Rules of Civil Procedure, Rule 4(e)(2); U.S.Constit.Amend. XIV.

In this case there has been continual contact by the defendants with the State of Arizona. For a 10 year period, the defendants contracted with Rhoads for the creation of a product, the cartoon strips, in Arizona. Written orders were sent to Rhoads in Arizona, the completed work was sent from Arizona to New York and payment was made to Rhoads in Arizona. The defendants' contacts with Arizona have been numerous and deliberate, and entered into for the purpose of commercial benefit to the defendants. The "minimum contacts" requirement of *International Shoe* is satisfied. The relationship of the defendants here with Arizona is markedly stronger than was the case in *Molybdenum Corp. of America v. Superior Court*, 17 Ariz.App. 354, 498 P.2d 166 (1972), where this court found that the defendants had caused an event to occur in Arizona.

It should be noted that the defendants' activities and the effects of that activity have had an impact upon matters in which Arizona has a legitimate governmental interest. The Arizona resident plaintiffs have alleged fraud on the part of the defendants in connection with the contractual dealings between the parties. Defendants sent drawing assignments to Rhoads in Arizona, the work was accomplished in Arizona and payment for the work was mailed to Arizona. If there was fraud in these transactions, Arizona clearly has a legitimate interest in protecting its citizens in such circumstances. Defendants reasonably could have anticipated that they would be subject to litigation in Arizona. As a national organization, they cannot reasonably believe that all those with whom they have business dealings will forego access to the courts of their state of residence and restrict their choice of forum to New York.

Having determined that defendants' contacts with Arizona were deliberate and purposeful and were of such quality and nature as to satisfy the first step of our analysis, we now must determine whether the exercise of personal jurisdiction by Arizona would be consistent with the requirements of due process. The test to be used as set out in *Phillips* requires that we consider:

1. the nature and size of the defendant's business;

2. the economic independence of the plaintiff; and

3. the nature of the cause of action including the applicable law and the practical matters of trial.

The court in *Phillips* went on to state that the above factors were guidelines and were not exclusive and "the court should consider all other matters it deems relevant." 100 Ariz. at 260, 413 P.2d at 738.

Because a protective order was issued which denied plaintiffs' interrogatories, it is difficult to determine the size of the defendants' business. It is noted, however, that the corporate letterhead states the defendants are engaged in the following lines of business: Comics, books, toys, foods, movies, television and clothes. In addition, the letterhead indicates that the defendants are a national and perhaps, an international corporation.

Rhoads has been unemployed as a cartoonist since late 1977 and while not paupers, to require the plaintiffs to bring suit in New York would impose a severe economic hardship. To deny jurisdiction in this case might effectively deny residents of Arizona an opportunity to litigate their claim.

While "the question whether the law of a State can be applied to a transaction is different from the question whether the courts of that State have jurisdiction to enter a judgment," *Hanson v. Denckla*, 357 U.S. 235, 258, 78 S.Ct. 1228, 1242, 2 L.Ed.2d 1283 (1958), the applicable law is a factor in determining the fairness of a state's exercising jurisdiction. Here the complaint alleges fraud on the part of the defendants, and an analysis of Restatement (Second) Conflict of Laws, Sec. 148, indicates that Arizona law rather than New York law will be applicable in this case. Rhoads acted in reliance on the defendants' representations in Arizona and it is alleged that the choice of Arizona by Rhoads was with the knowledge and consent of the defendants. The Restatement states that when the plaintiff acts in reliance in a single state, that state's law will apply if ". . . or (b) this state is the state of plaintiff's domicile or principal place of business, . . ." Sec. 148, Comment j.

A second issue raised on appeal is whether the officers of the corporate defendants are also subject to jurisdiction in Arizona.

As stated in *Maloof v. Roper Sales, Inc.*, supra:

"It is well settled that an officer, director or shareholder of a corporation may not be held liable for the torts of the corporation unless (1) he authorized or participated in the actions or (2) the corporation is an alter ego." 113 Ariz. at 488, 557 P.2d at 525.

The plaintiffs' verified complaint alleges that the corporations are the alter ego of the individual defendants and that the individuals participated in the fraudulent conduct. If either allegation is proven, the individual defendants will be personally liable. The alter ego allegation has not been controverted by the individual defendants in the motion to dismiss. We therefore hold the plaintiffs have presented facts sufficient to resist dismissal of their complaint as to the individual defendants.

Reversed.

RICHMOND, C. J., and HOWARD, J., concur.