253 So.2d 902 (1971)
EDER INSTRUMENT CO., Inc., Appellant,
v.
Hazel ALLEN and Alfred H. Allen, Her Husband, Appellees.
No. 71-567.
District Court of Appeal of Florida, Third District.
October 26, 1971.
Rehearing Denied November 23, 1971.
*903 Carey, Dwyer, Austin, Cole & Selwood, Edward A. Perse, Miami, for appellant.
Guilmartin, Gaine & Gaine, Miami, Joe N. Unger, Miami Beach, for appellees.
Before SWANN, C.J., and HENDRY and BARKDULL, JJ.
HENDRY, Judge.
By this interlocutory appeal, the defendant-appellant Eder Instrument Co., Inc., an Illinois corporation seeks to review an order of the circuit court which denied its motion to dismiss on jurisdictional grounds. The order appealed operated to subject the appellant to substituted service of process and thereby the jurisdiction of the Florida courts. We affirm the order appealed, and hold that the appellant is subject to service of process under § 48.181, Fla. Stat., F.S.A.
The plaintiff-appellees, Mr. and Mrs. Allen, sued the defendant-appellant for personal *904 injuries, and made the following material allegations in their complaint: 1. Eder Instrument Company, Inc., is a foreign corporation not licensed to do business in Florida, but doing business in Florida. 2. Defendant manufactured a product known and described as an Eder Gastroscope. 3. Defendant sold the product to Hialeah Hospital in Dade County. 4. Defendant warranted that the product was reasonably fit for the intended use as a gastroscope. 5. On or about January 29, 1969, while Mrs. Allen was confined to Hialeah Hospital, and while she was being gastroscoped, with the defendant's product, the instrument developed a fracture in the control mechanism, causing injuries to her.
The circuit court held in abeyance its decision on appellant's motion to dismiss for lack of jurisdiction and allowed discovery limited to the jurisdictional issues. The following facts, apparently uncontested, developed: the hospital had not purchased any equipment from the appellant other than the instrument involved in this suit; the instrument was recommended for purchase by a member of the hospital staff. The defendant had not solicited sales or displayed its products through medical or surgical conferences in Florida. However, the appellant advertised in certain unspecified medical journals, which the administrator of the Hialeah Hospital read in Florida. For at least three years prior to the instant suit, the appellant had, in its own words, "periodically" sold products, which it manufactured, to doctors, hospitals, or manufacturers in Florida. For each of the three years prior to the instant litigation, appellant had sold approximately $5,000.00 worth of its products to these various customers in Florida. During the year preceding the suit herein, these purchasers were located throughout the state, namely in Jacksonville, North Miami Beach, Fort Pierce, Tampa, St. Petersburg, and Clearwater.
The president of the appellant in his affidavit, which is uncontradicted on the record, stated that at the present time, and at the time of the alleged incident in 1969, the company has no agents, brokers, wholesalers, distributors, or detail men in the State. The company does not maintain an office or mailing address in Florida. From the answers to interrogatories, it appears that the usual method of doing business was that the company received purchase orders by mail, and delivery was made by common carrier, f.o.b. Chicago. Many of the purchasers would, in advance of placing an order, request the company to send a list of prices and specifications, which the company would send by return mail.
The appellant is not a subsidiary and owns no subsidiary corporations.
The statute involved is § 48.181, Fla. Stat. 1969, F.S.A. which provides:
"Service on nonresident engaging in business in state
"(1) The acceptance by any person or persons, individually, or associated together as a copartnership or any other form or type of association, who are residents of any other state or country, and all foreign corporations, and any person who is a resident of the state and who subsequently becomes a nonresident of the state or conceals his whereabouts, of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, constitutes an appointment by the persons and foreign corporations of the secretary of state of the state as their agent on whom all process in any action or proceeding against them, or any of them, arising out of any transaction or operation connected with or incidental to the business or business venture may be served. The acceptance of the privilege is signification of the agreement of the persons and foreign corporations that the process against them which is so served is of the same validity as if served personally on the persons or foreign corporations.

*905 "(2) If a foreign corporation has a resident agent or officer in the state, process shall be served on the resident agent or officer.
"(3) Any person, firm or corporation which sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers or distributors to any person, firm or corporation in this state shall be conclusively presumed to be operating, conducting, engaging in or carrying on a business venture in this state."
General principles set forth by the United States Supreme Court in International Shoe Co. v. State of Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, require that in order for a defendant to be subject to an in personam judgment while not physically within the territory of the forum, there must exist certain minimum contacts with the forum so as not to offend traditional notions of fair play and substantial justice. While Mr. Justice Stone indicated a distinction between continuous and systematic activities of a foreign corporation with a single act or isolated items of activities in a state, Mr. Justice Black, speaking for seven other members of the court, indicated in McGee v. International Life Insurance Co. (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, that jurisdiction could be based on the commission of a single act within or directed towards the forum; but cf. Hanson v. Denckla (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. Admittedly, the McGee case dealt with insurance, traditionally subject to state regulation. In Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861, 868 (5th Cir., 1965), the court held:
"* * * Alabama may, consistent with the due process clause of the Fourteenth Amendment, assert jurisdiction over a non-resident, nonqualifying corporation in suits on a claim of liability for tortious injury arising out of activity of the non-resident within the state, even though only a single transaction is involved, and regardless of whether the activity is considered dangerous."
In Florida, the burden is upon the party invoking the jurisdiction of a court of this State to make it appear that the cause of action upon which he sues is one which arose out of the activities of the foreign corporation within this state. A failure to do so will render any service upon an agent of that corporation doing business within this state invalid and ineffectual. Zirin v. Charles Pfizer & Co., Inc., Fla. 1961, 128 So.2d 594.
At the outset there is little doubt that but for the allegedly defective product being sold, delivered, and used in Florida, there would have been no injury sustained.
This court has recently determined that while a foreign corporation does not maintain offices or agents in this state, nevertheless where that foreign corporation for a period of years systematically and continuously participated in the sale of a product to customers within and throughout the state, such a corporation comes within the constitutional requisites of "doing business" set forth in § 48.181, Fla. Stat. 1969, F.S.A., so as to render such corporation amenable to process and the jurisdiction of the courts of this state. Sayet v. Interstate Blood Bank, Inc., Fla.App. 1971, 245 So.2d 142.
Appellant would attempt to distinguish the effect of this court's ruling in Sayet, supra, by pointing to the fact that the blood bank sold in Florida $150,000.00 worth of its product per year, while in the instant case the medical instrument company received only $5,000.00 per year from its Florida sales. In the Sayet case, at p. 143, the volume of its Florida business was "appreciable." The record herein does not indicate what percentage of Eder Instrument Company's sales in volume or amount are represented by its Florida sales. A high-volume, low cost product which is *906 dangerous cannot be distinguished from a low-volume, high cost dangerous product.[1] So long as there is a "minimum contact" with this jurisdiction, the determinative question is whether goods are dealt with within the state for the pecuniary benefit of the person providing or otherwise dealing with those goods, DeVaney v. Rumsch, Fla. 1969, 228 So.2d 904, under the "doing business" long-arm statute, § 48.181. Cf. Stephenson v. Duriron Co., 401 P.2d 423 (Alaska, 1965) cert. den. 382 U.S. 956, 86 S.Ct. 431, 15 L.Ed.2d 360. We must again admit to a strong feeling that public policy influences us to a holding that a supplier of a medical instrument which has such intimate internal physical contact as is the instrument here ought to be amenable to service of process under the facts we have here detailed.
Any individual or corporation who has exercised the privilege of practicing a profession or otherwise dealing in goods, services or property, whether in a professional or nonprofessional capacity, within the state in anticipation of economic gain, is to be regarded as operating a business or business venture for the purpose of service of process under Florida Statute § 48.181, F.S.A. in suits resulting from their activity within the state. DeVaney v. Rumsch, Fla. 1969, 228 So.2d 904; Sayet v. Interstate Blood Bank, Inc., supra.
The appellee has properly, we think, phrased the general rule to be applied. A foreign corporation, not licensed to do business in Florida is amenable to service of process and the jurisdiction of Florida courts under § 48.181, Fla. Stat. 1969, F.S.A., where, although not maintaining an office or agent in Florida, it has for several years systematically and regularly sold its products to persons and organizations within the state, and the cause of action asserted arises out of the use of its product within the state. See generally: Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732, 19 A.L.R.3d 1 (1966) (en banc); "Anno.: Products liability: in personam jurisdiction over nonresident manufacturer or seller under `long-arm' statutes," 19 A.L.R.3d 13, esp. 101-102 (1968); Longines-Wittnauer Watch Co., Inc. v. Barnes & Reinecke, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, 24 A.L.R.3d 508 (1965), cert. den., 382 U.S. 905, 88 S.Ct. 241, 15 L.Ed.2d 158; "Anno.: Validity as a matter of due process, of state statutes or rules of court conferring in personam jurisdiction over nonresidents or foreign corporations on the basis of isolated business transaction within state," 20 A.L.R.3d 1201 (1968). "Anno.: Construction and application of state statutes or rules of court predicating in personam jurisdiction over nonresidents or foreign corporations on the commission of a tort within the state," 24 A.L.R.3d 532 (1969); "Anno.: Construction and application, as to isolated acts or transactions, of state statutes or rules of court predicating in personam jurisdiction over nonresidents or foreign corporations upon the doing of an act, or upon doing or transacting business or `any' business, within the state," 27 A.L.R.3d 397 (1969).
For the reasons stated, and upon the authorities cited, the judgment appealed is affirmed.
Affirmed.
NOTES
[1] Appellant, after oral argument, filed a notice to rely upon the recent case of Wolfson v. Houston Post Company, 441 F.2d 735 (5th Cir., 1971), as authority for its position. The Wolfson case was controlled by the case of New York Times Company v. Connor, 365 F.2d 567 (5th Cir., 1966). At p. 572 of the Connor case, Circuit Judge Thornberry, harmonized apparently contradictory cases which had been decided within several months of each other. Rather than drawing a distinction limiting jurisdiction to torts arising from dangerous activities and those from non-dangerous activities, he distinguished between libel cases involving the First Amendment and other tort cases:

"* * *  First Amendment considerations surrounding the law of libel require a greater showing of contact to satisfy the due process clause than is necessary in asserting jurisdiction over other types of tortious activity. * *"