359 So.2d 483 (1978)
AMERICAN BASEBALL CAP, INC., Appellant,
v.
Andrew Thomas DUZINSKI, Henry T. Duzinski and Irene Duzinski, Appellees.
No. HH-148.
District Court of Appeal of Florida, First District.
May 9, 1978.
Rehearing Denied June 14, 1978.
*485 Alan Thompson of Sale, Bryant, Daniel & Thompson, Panama City, for appellant.
W.A. Swann, Jr., Pensacola, George A. Cox, for appellees.
BOYER, Acting Chief Judge.
By this appeal, American Baseball Cap, Inc. (hereinafter defendant) appeals from an order denying its motion to dismiss.
This is the second time this case has been in this court. In a prior appeal from an order denying defendant's motion to dismiss, this court held that plaintiffs failed to meet their burden of proof of supporting the allegations of their complaint and showing facts sufficient to sustain the propriety of substituted service of process but the plaintiffs were afforded another opportunity to attempt service. (American Baseball Cap, Inc. v. Duzinski, 308 So.2d 639 (Fla. 1st DCA 1975))
The Duzinskis (hereinafter plaintiffs) brought suit against defendant alleging that Andrew Duzinski was injured in 1969 while wearing a baseball helmet manufactured by defendant. The jurisdictional allegations in the complaint were that the defendant "sells, consigns, or leases tangible personal property through brokers, jobbers, wholesalers, or distributors to persons, firms, and corporations in this state . ."; that although defendant is not licensed to do business in the state of Florida, it "has been doing business in this state"; and that defendant "manufactured the said helmet and sold the same either directly or through jobbers, to the defendant, Northwest Florida Office of School Supply, Inc., of Fort Walton Beach, Florida, who sold the said helmet to the City of Fort Walton Beach, Florida" who furnished it to Andrew Thomas Duzinski. Plaintiffs attempted to obtain substituted service of process on defendant under F.S. 48.161, F.S. 48.181 and F.S. 48.182. Defendant filed a motion to dismiss for lack of jurisdiction over the person, insufficiency of process, and insufficiency of service of process, stating that it was a foreign corporation not doing business in Florida at the time the injury occurred. It is the denial of that motion which is the subject of this interlocutory appeal.
Defendant is a Pennsylvania corporation with a home office in Media, Pennsylvania. *486 At the time of the alleged injury and prior thereto, defendant did not own any property in Florida; did not maintain any office, telephone listing, bank account or business records in Florida; and did not have any salesmen, employees, representatives, dealers, franchises, jobbers, brokers nor agents of any nature in this state. At the time of Andrew Duzinski's injury, 90% of defendant's business consisted of sales of its helmets to major sporting goods companies, all of whom were located outside Florida. The remaining 10% of defendant's business was done pursuant to purchase orders or telephone calls. Defendant contends those orders were shipped F.O.B. directly to the purchaser or as requested by the purchaser. Several of the purchase orders in the record provide that shipments be F.O.B. shipping point. It is the 10% of defendant's business which is done pursuant to purchase orders that we will be concerned with in this appeal.
Defendant's president visited Florida several times prior to 1969 and observed major league baseball spring training games. Defendant contends those visits were family vacations and not business trips. However, defendant's president was unable to produce any proof that it was he and not the corporation who paid his expenses for the trips.
After this court's decision in the prior appeal, plaintiffs made additional discovery at defendant's home office in Media, Pennsylvania and found: (1) direct sales to retail sporting goods stores in Florida; (2) direct sales to major league baseball teams in Florida; and (3) direct sales to major sporting goods manufacturers in which shipment was made directly from defendant to retail sporting goods stores in Florida. The records examined represented only the portion of the alphabet from A to G: Those records revealed that defendant shipped in excess of 1,250 helmets to 88 different buyers in Florida who were located in 30 different Florida cities.
F.S. 48.161 relates only to procedure and F.S. 48.182 was not enacted until after the occurrence of the accident giving rise to this controversy. Therefore, the only statute with which we are concerned here is F.S. 48.181, Florida Statutes 1969, which provides:
"48.181 Service on nonresident engaging in business in state.
"(1) The acceptance by any person or persons, individually, or associated together as a copartnership or any other form or type of association, who are residents of any other state or country, and all foreign corporations, and any person who is a resident of the state and who subsequently becomes a nonresident of the state or conceals his whereabouts, of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, constitutes an appointment by the persons and foreign corporations of the secretary of state of the state as their agent on whom all process in any action of proceeding against them, or any of them, arising out of any transaction or operation connected with or incidental to the business or business venture may be served. The acceptance of the privilege is signification of the agreement of the persons and foreign corporations that the process against them which is so served is of the same validity as if served personally on the persons or foreign corporations.
"(2) If a foreign corporation has a resident agent or officer in the state, process shall be served on the resident agent or officer.
"(3) Any person, firm or corporation which sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers or distributors to any person, firm or corporation in this state shall be conclusively presumed to be operating, conducting, engaging in or carrying on a business venture in this state."
We will consider the three subsections of F.S. 48.181 in reverse order:
Subsection (3) becomes applicable only when the nonresident person, firm, or *487 corporation sells, consigns, or leases tangible or intangible personal property through brokers, jobbers, wholesalers or distributors. A single sale is sufficient. (Dinsmore v. Martin Blumenthal Associates, Inc., 314 So.2d 561 (Fla. 1975)) However, in order to invoke subsection (3) for the acquisition of jurisdiction over a nonresident defendant it is necessary that the party attempting to effect service must demonstrate either (1) that the nonresident defendant has some degree of control over the personal property referred to in said subsection (3) of the statute in the hands of the brokers, jobbers, wholesalers or distributors selling or distributing the property in this state, or (2) that the nonresident defendant has some degree of control over the brokers, jobbers, wholesalers or distributors selling or distributing the said personal property in this state. (Fawcett Publications, Inc. v. Rand, 144 So.2d 512 (Fla. 3rd DCA 1962); Dinsmore v. Martin Blumenthal Associates, Inc., supra)
Sub judice, the record does not support any business by defendant "through brokers, jobbers, wholesalers or distributors" in this state. However, even were the retailers to whom direct sales were made or the major sporting goods manufacturers which directed that shipment be to their retail outlets in Florida be construed as either brokers, jobbers, wholesalers or distributors in this state, nevertheless there is no evidence of the requisite control, therefore the plaintiffs may not rely for service upon F.S. 48.181(3).
Plaintiff's reliance upon Dublin Company v. Peninsular Supply Company, 309 So.2d 207 (Fla. 4th DCA 1975) as authority for the proposition that the trips of defendant's president to see the major league baseball spring training games constituted acts of control over defendant's product is misplaced. In that case the company president came to Florida to confer with the plaintiff therein about the product which had been purchased by that plaintiff and to negotiate regarding replacement of the defective product. Under those circumstances the court there found that the company's interest in its product extended through the distributor to the ultimate purchaser. There is no evidence sub judice that the defendant's president came to Florida to check up on the performance of the company's helmets nor to otherwise discuss the product. Instead, the evidence clearly reveals that defendant's president was an ardent baseball fan and took a spring vacation to Florida so that he might observe spring training games. Even if the company paid for his trip, there is no evidence that any business was transacted nor that his presence in Florida related to any control over any distributors of the product nor the product itself.
Plaintiffs further argue that because the face of some of the purchase orders contain an indemnity clause concerning damage resulting from defects that the defendant's association with the product did not end when the product was shipped to Florida. However, those purchase orders were made out to the distributors of the helmets and are not evidence that defendant's interest in its product extended through the distributor to the ultimate purchaser.
We agree with the defendant that as to the requirement of control, this case is more analogous to decisions in Cooke-Waite Laboratories, Inc. v. Napier, 166 So.2d 675 (Fla. 2d DCA 1964) and AB CTC v. Morejon, 324 So.2d 625 (Fla. 1975) in which, as here, the defendant exercised no control over the product nor the distributors. The distribution of the defendant's helmets is similar to the distribution of magazines, washing machines and needles in the cases of Fawcett Publications, Inc. v. Rand, supra, AB CTC v. Morejon, supra, and Cooke-Waite Laboratories, Inc. v. Napier, supra, respectively, since control was severed at the time of the initial sale and distribution. This situation is unlike that of giving a listing to a broker wherein the seller's control over the listing agreement and the broker continues. (Dinsmore v. Martin Blumenthal Associates, Inc., supra)
Continuing in inverse order of consideration, it is not even contended that subsection (2) of F.S. 48.181 is here applicable.
*488 We now turn our consideration to F.S. 48.181(1). Since the defendant had no office nor agency in the state of Florida said subsection (1) may be invoked sub judice only if it operated, conducted, engaged in, or carried on a business or business venture in the state. As already observed, the defendant's contacts with the state of Florida were minimal. Its president vacationed in the state as millions of nonresidents do each year and as the tourist industry hopes will continue. Those visits will not subject the defendant to substituted service of process. The sales to nonresident major sporting goods companies which were shipped in accordance with the purchaser's directions to sales outlets in Florida could not constitute the doing of business in Florida because, as already noted, those companies were not "brokers, jobbers, wholesalers or distributors" in this state; and even if they were, neither they nor the product after it reached them were under the control of the defendant. (See Dinsmore v. Martin Blumenthal Associates, Inc., supra) The defendant did, however sell some helmets from its Pennsylvania headquarters directly to Florida retailers and a few helmets were sold directly to major league baseball teams training in Florida. Nevertheless, if we properly construe Fawcett Publications, Inc. v. Rand, supra, specifically cited, quoted from and approved by the Supreme Court of Florida in Dinsmore v. Martin Blumenthal Associates, Inc., supra, direct sales by a foreign corporation, not otherwise doing business in Florida, from a place of business not in this state, to retailers in Florida, when no control is retained by the foreign corporate seller, does not constitute operating, conducting, engaging in, or carrying on a business or business venture in Florida within the meaning and contemplation of F.S. 48.181(1). In the Fawcett case the foreign corporation sold its product (magazines) to "independent contractors" in Florida, which sold to news-stands, which in turn sold to the general public. That activity was held not sufficient to authorize substituted service pursuant to F.S. 48.181(1). We are unable to distinguish between sales to "independent contractors" in the state and retailers in the state: Neither do we denote a logical distinction between sales to an independent contractor or retailer on the one hand (over which the seller has no control) and a sale to an ultimate user on the other. In each instance, if the sale is made via interstate commerce from out-of-state the seller's interest in the product ends when it is sold, delivered and paid for. If this reasoning is sound then the sales sub judice directly to retailers in Florida and to the major league baseball teams in Florida would not be sufficient to invoke the aid of F.S. 48.181(1). We have not overlooked the decisions of our sister court of the Third District in Sayet v. Interstate Blood Bank, Inc., 245 So.2d 142 (Fla. 3rd DCA 1971) and Eder Instrument Co. v. Allen, 253 So.2d 902 (Fla. 3rd DCA 1971). However, in each of those cases the court "admitted" that the decision was influenced by "a strong feeling of public policy" where human blood in the first instance and medical instruments in the latter were the products involved.
We find ourselves, though, in the same position sub judice as did our sister court of the Fourth District in Manus v. Manus, 193 So.2d 236 (Fla. 4th DCA 1966) wherein the author of that opinion stated:
"* * * Since the alleged cause of action against this foreign corporation is not shown to have arisen out of an obligation or cause connected with the activities of this foreign corporation in this state, we cannot reach the question of whether or not this foreign corporation was doing business in this state." (193 So.2d at page 238)
The same is true here: Although we have stated our views, it is not necessary sub judice that we determine whether the direct sales above mentioned constitute "doing business" in this state, or are sufficient to demonstrate the "minimal contacts sufficient to meet due process requirements" (Dinsmore v. Martin Blumenthal Associates, Inc., supra, and authorities therein cited) because there is no showing at all that the plaintiff's cause of action against defendant arose out of an obligation or cause connected *489 in any manner with defendant's activities in this state. It has been repeatedly held that in order to invoke application of F.S. 48.181 it is necessary that the alleged cause of action arise out of a transaction or operation connected with or incidental to the activities of the nonresident in the state of Florida. See American Baseball Cap, Inc. v. Duzinski, supra, and the numerous cases therein cited; Holiday Inns, Inc., etc., et al. v. Jamison, 353 So.2d 1269 (Fla. 1st DCA 1978). See also Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) wherein the court held invalid the assertion by a state of personal jurisdiction over defendants on the basis of property owned by them located in that state, saying:
"* * * Yet that property is not the subject matter of this litigation, nor is the underlying cause of action related to the property. * * *" (433 U.S. at page 213, 97 S.Ct. at page 2585).
It has also been repeatedly held that statutes providing for substituted service must be strictly construed and that the party seeking to effect service thereunder has the burden of presenting facts which clearly justify the applicability of the statute. (American Baseball Cap, Inc. v. Duzinski, supra, and cases therein cited)
Plaintiffs having failed to demonstrate the applicability of either of the three subsections of F.S. 48.181 and this court having determined in the prior appeal hereinabove mentioned the inapplicability of F.S. 48.182, the order of the learned trial judge denying appellant's motion to dismiss for lack of jurisdiction is reversed.
In order to facilitate review by the Supreme Court of Florida we hereby, pursuant to Rule 9.030(a)(2)(A)(ii) Fla.R.App.P., certify this decision as passing upon a question of great public interest.
REVERSED.
MILLS, J., concurs.
ERVIN, J., specially concurs.
ERVIN, Judge, specially concurring.
I reluctantly concur in the conclusion of this case because it appears to be governed by the opinions of the Florida Supreme Court in Dinsmore v. Martin Blumenthal Associates, Inc., 314 So.2d 561 (Fla. 1975) and AB CTC v. Morejon, 324 So.2d 625 (Fla. 1976), requiring control by the nonresident defendant over the distributor before the nonresident can be held to be doing business within the state pursuant to Section 48.181(1) or (2). Nevertheless the facts as recited in Dinsmore and Morejon are vastly different from those involved here. In Dinsmore there was no showing that the nonresident defendant established minimal contacts so as to subject it to personal service within the forum state. The facts in Dinsmore showed only one isolated exchange of stock outside the State of Florida. Clearly, as the Supreme Court stated, the provisions of Section 48.181(1) were not met by plaintiff since there was no showing that the defendant was conducting a general course of business activity within the State of Florida. The facts recited in Morejon were the same. There the plaintiff filed a complaint in Florida against AB CTC, a Swedish corporation, and Bermil Industries, a Swedish independent contractor. The facts did not recite the sale in Florida of any washing machine other than the washing machine which caused plaintiff's injuries.
The facts here are entirely different. The record is replete with numerous direct sales from the manufacturer in Pennsylvania to retail sporting goods stores in Florida. Clearly, on constitutional principles alone, there would be no violation of due process if the defendant were held subject to personal service. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Company v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). To determine whether the contacts of the *490 nonresident defendant are sufficient to subject it to personal service, the presence of such defendant "has never been doubted when the activities of the [defendant] corporation ... have not only been continuous and systematic, but also give rise to the liabilities sued on, ..." Id. at 317, 66 S.Ct. at 159. Additionally, once minimal contacts are established, even though there may be inconvenience to the nonresident defendant if it were held amenable to suit in the forum state, such inconvenience does not amount to a denial of due process. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Two recent cases from our court, construing the effect of a different statute, Section 48.193, Florida Statutes (1975), invalidated attempts at personal service because the requisite contacts by the nonresident were not made. Dunn v. Upjohn Co., 350 So.2d 127 (Fla. 1st DCA 1977); Jack Pickard Dodge, Inc. v. Yarbrough, 352 So.2d 130 (Fla. 1st DCA 1977).
In addition to establishing minimal contacts in Florida, American Baseball Cap's business activities were in compliance with the Dinsmore court's construction of subsection (1), that the nonresident carry on a general course of business activity within the forum state. Yet Dinsmore continues, although subsection (1) does not expressly require control,[1] "... we hold that the requisite control, as explained herein, is also applicable to § 48.181(1), where the nonresident is doing business through brokers, jobbers, wholesalers or distributors." Id. at 566. Obviously there was no control by American Baseball Cap over retail distributors in Florida. Nor was there control by Fawcett Publications, a Delaware Corporation (Fawcett Publications, Inc. v. Rand, 144 So.2d 512 (Fla. 3d DCA 1962), which Dinsmore and Morejon cite with approval) over magazine distributors in Florida. Nevertheless no violence would be done to any constitutional principle if American Baseball Cap were held amenable to suit in Florida, yet because of the limited construction placed upon Section 48.181(1), a resident who alleges serious injury caused by a defectively manufactured baseball helmet, placed into interstate commerce by a national manufacturer, has no access to the courts within the state where he resides. Surely, Florida, as did the state of California in McGee v. International Life Ins. Co., supra, has a "manifest interest" in providing redress to its residents whose injuries are caused by defectively manufactured products and who otherwise would be at a severe disadvantage if forced to go to a distant state to hold the nonresident legally accountable.
Additionally I find myself in disagreement with the court's conclusion that there was no showing that the plaintiff's cause of action arose out of an obligation or cause connected in any manner with defendant's activities in this state. The plaintiff's complaint specifically alleged that the defendant manufactured the helmet and sold the same either directly or through jobbers to the defendant, Northwest Florida Office of School Supply, Inc. of Ft. Walton Beach, Florida, who sold the said helmet to the City of Ft. Walton Beach, Florida. I suggest that this is a sufficient allegation of nexus to the injury which was alleged.
*491 I concur that the question is one of great public importance.
NOTES
[1] Indeed, when subsection (1) was first enacted by Ch. 57-747, Laws of Florida, the legislative intent was expressed in the preamble to the act as follows:

AN ACT to amend Section 47.16, Florida Statutes, [the predecessor statute to 48.181] to include foreign manufacturers doing business in Florida through brokers, jobbers, wholesalers or distributors.
WHEREAS, persons, firms and corporations in other jurisdictions are directly or indirectly furnishing millions of dollars worth of tangible and intangible personal property to persons, firms and corporations in this state each year; and
WHEREAS, litigation in both tort and contract frequently arises out of the purchase, lease, consignment, use and consumption of such property each year; and
WHEREAS, the cost and expense of going to other jurisdictions, both national and international, frequently has the practical effect of denying all rights and remedies regarding such purchase, lease, consignment, use and consumption; and
WHEREAS, it is just and fair that such litigation be conducted in this state rather than in a foreign jurisdiction, NOW THEREFORE, ... .